1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ANITA M. REHANA,                        No.  2:16-cv-0006-EFB

12              Plaintiff,

13        v.                                 ORDER

14   NANCY A. BERRYHILL, Acting
     Commissioner of Social Security
15
                Defendant.
16

17

18          Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19   ("Commissioner") denying her applications for a period of disability and Disability Insurance

20   Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the

21   Social Security Act.  The parties have filed cross-motions for summary judgment.  For the

22   reasons discussed below, plaintiff's motion for summary judgment is denied and the

23   Commissioner's motion is granted.

24   I.     BACKGROUND

25          Plaintiff filed applications for a period of disability, DIB, and SSI, alleging that she had

26   been disabled since February 1, 2011.[1]  Administrative Record ("AR") 183-198.  Plaintiff's

27   _____

28          [1]  Plaintiff subsequently amended her alleged onset date to June 28, 2012.  *See* AR 21.

                                                 1

applications were denied initially and upon reconsideration. *Id.* at 125-129, 134-139. On March 4, 2014, a hearing was held before administrative law judge ("ALJ") Daniel G. Heely. *Id.* at 40-62. Plaintiff was represented by counsel at the hearing, at which she and a vocational expert ("VE") testified. *Id.*

On May 21, 2014, the ALJ issued a decision finding that plaintiff was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Act.[2] *Id.* at 21-35. The ALJ made the following specific findings:

/////

/////

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq.* Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq.* Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(a)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

2

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.

2.  The claimant has not engaged in substantial gainful activity since June 28, 2012, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.  The claimant has the following severe impairments: fibromyalgia syndrome; asthma; joint pain secondary to osteoarthritis; a depressive disorder; a seizure disorder; and post traumatic stress disorder (20 CFR 404.1520(c) and 416.920(c)).

    * * *

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

    * * *

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant is limited to simple, routine, and repetitive tasks; she is limited to occasional public contact; she can never climb ladders, ropes or scaffolds; she can occasionally climb ramps or stairs; she can occasionally balance, stoop, kneel, crouch or crawl; she can never work around hazards like moving dangerous machinery or walking around unprotected heights; she cannot operate motor vehicles or work around any other types of activities in a work setting that may be considered prohibited by someone with seizures; and she would have to avoid concentrated exposure to fumes, odors, dusts, gases and other environmental irritants.

    * * *

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

    * * *

7.  The claimant was born [in] 1966 and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

  *  *  *

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 28, 2012, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

*Id.* at 23-35.

Plaintiff's request for Appeals Council review was denied on October 30, 2015, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 2-6.

II.   LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

/////

/////

/////

III.    <u>ANALYSIS</u>

Plaintiff argues that the ALJ erred (1) by relying on testimony from a VE to find that she was not disabled and (2) discounting her credibility without providing legally sufficient reasons. ECF No. 17 at 8-13.

A.    <u>The ALJ Permissibly Relied on the VE's Testimony</u>

Plaintiff first argues that the ALJ erred at the fifth step of the sequential evaluation by relying on the VE's testimony that deviated from the Dictionary of Occupational Titles ("DOT"). ECF No, 17 at 8-11.

At the fifth step, the ALJ is required to "identify specific jobs existing in substantial numbers in the national economy that [the] claimant can perform despite her identified limitations." *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995). The ALJ must first assess the claimant's residual functional capacity ("RFC"), which is the most the claimant can do despite her physical and mental limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The ALJ then must consider what potential jobs the claimant can perform given her RFC. 20 C.F.R. §§ 404.1566, 416.966. "In making this determination, the ALJ relies on the DOT, which is the SSA's primary source of reliable job information regarding jobs that exist in the national economy." *Zavalin v. Colvin*, 778 F.3d 842, 845-46 (9th Cir. 2015) (quotation marks omitted).

In additional to the DOT, an ALJ may rely on testimony from a vocational expert who testifies about the jobs the claimant can perform in light of her RFC. 20 C.F.R. §§ 404.1566(e), 416.966(e); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). Generally, occupational evidence provided by a vocational expert should be consistent with the occupational information supplied by the DOT. *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007) (citing SSR 00-4p, at *4). However, "an ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation." *Johnson*, 60 F.3d at 1435. An ALJ may not "rely on a vocational expert's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflict with the Dictionary of Occupational Titles." *Massachi*, 486 F.3d at 1152.

/////

1    The Ninth Circuit has explained that "when a vocational expert provides evidence about

2 the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask

3 about any possible conflict between that vocational evidence and information provided in the

4 Dictionary of Occupational Titles." *Id.* (internal quotations and emphasis omitted). "When there

5 is an apparent conflict between the vocational expert's testimony and the DOT—for example,

6 expert testimony that a claimant can perform an occupation involving DOT requirements that

7 appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency."

8 *Zavalin*, 778 F .3d 846.

9    At the administrative hearing, the ALJ asked the VE to consider whether there were jobs

10 in the national economy that could be performed by a hypothetical individual with plaintiff's age,

11 education, work experience (including transferrable skills), and RFC.  AR 58-60.  The VE

12 testified that such an individual could work as a small products assembler I, office helper, and

13 mail clerk.  *Id.* 60-61.  The ALJ relied on this testimony in finding that plaintiff was not disabled

14 because there were significant jobs in the national economy that she could perform.  *Id.* at 35.

15    Plaintiff argues that the ALJ erred in relying on the VE's testimony that she could perform

16 these jobs.  ECF No. 17 at 9.  Specifically, plaintiff contends that the ALJ's finding that she can

17 never work around hazards like dangerous machinery or perform any other types of activities

18 prohibited by someone with seizures precludes her from working as a small products assembler

19 and office helper as those jobs are described by the DOT.  *Id.* at 10-11.  She further claims that

20 her limitation to simple, routine, and repetitive tasks conflicts with an ability to work as a mail

21 clerk because that job requires level 3 reasoning.  *Id.* at 11.

22    According to the DOT, a small products assembler is required to perform repetitive tasks

23 on an assembly line to mass produce small products.  Assembler, Small Products I, DOT

24 706.684-022, 1991 WL 679050.  The job requires the worker to fasten "parts together by hand or

25 using hand tools or portable power tools."  *Id.*  The work is frequently performed in assembly

26 groups, where an individual assembles one or two specific parts that are passed to another worker.

27 *Id.*  The job also includes loading and unloading "previously setup machines, such as arbor

28 /////

6

1    presses, drill presses, taps, spot-welding machines, riveting machines, milling machines, or

2    broaches, to perform fastening, force fitting, or light metal-cutting operation on assembly line."

3        Plaintiff contends that "it requires little imagination to picture the danger posed 'by

4    someone who has seizures' 'using handtools or portable power tools' alongside other works on an

5    assembly line.'"  ECF No. 19 at 2.  Thus, plaintiff argues, her seizures and inability to work

6    around dangerous machinery preclude her from performing this job.  *Id.*  Courts, have reached

7    different outcomes in addressing the question of whether the job of an assembler of small

8    products requires work around dangerous machinery.  *See Reyes v. Colvin*, 2015 WL 349352

9    (E.D. Cal. Jan. 23, 2015) (detailing split over whether job requires work around dangerous or

10   hazardous machinery); *Lair v. Colvin*, 2013 WL 1247708, at *4 (C.D. Cal Mar. 25, 2013) (same);

11   *Shannon v. Astrue*, 2011 WL 3420846, at *2-3 (C.D. Cal. Aug. 4, 2011) (finding that assembler

12   did not require work with "dangerous machinery"); *Ballesteros v. Astrue*, 2011 WL 836656, at

13   *3-4 (C.D. Cal. Mar. 8, 2011) ("[T]here does not appear to be an inherent conflict between

14   plaintiff's RFC [precluding work with motorized equipment] and the DOT description of the

15   small products assembler occupation."); *Jimenez v. Astrue*, 2012 WL 1067945, at *4 (C.D. Cal.

16   Mar. 29, 2012) (finding that an individual who is unable to work around "dangerous machinery"

17   is precluded from performing the job of small products assembler I); *Murphy v. Astrue*, 2011 WL

18   124723 (C.D. Cal. Jan 13, 2011) (finding that various machines identified in small products

19   assembler II, which includes a bench machine, "may be hazardous.").

20       While the question ultimately turns on the specific activities and tools required to perform

21   the job in question, the DOT contains a description of the work functions for the position of an

22   Assembler Small Products I.  As observed by one court, the job description "requires

23   performance of 'any combination' of the enumerated duties, not all of which entail operation of

24   motorized or dangerous equipment."  *Ballesteros*, 2011 WL 836656, at *4.  Moreover, with

25   respect to moving mechanical parts, the job description states "Not Present – Activity or

26   condition does not exist."  DOT 706.684-022, 1991 WL 679050.  The DOT description also states

27   that the worker may position "parts in specified relationship to each other, using hands, tweezer,

28   or tongs"; fasten "parts together by hand or using handtools or portable powered tools"; work as a

member of an assembly group; and load and unload various machines, "such as arbor presses,

drill presses, taps, spot-welding machines, riveting machines, milling machines, or broaches . . . ."

*Id*.  Plaintiff's functional limitations include not working around hazards such as moving

dangerous machinery, but those limitations do not appear to preclude the performance of these

tasks.  While the DOT indicates that a small products assembler may use portable handheld

powered tools to assist with assembly, there is no indication that these smaller tools are

hazardous, dangerous, or otherwise precluded by plaintiff's RFC.  *See Carrillo v. Astrue*, 2012

WL 4107824, at *5 (C.D. Cal. Sept. 18, 2012) (finding that a sewing machine does not constitute

"hazardous machinery," and that its moving parts did not expose its operator to possible bodily

injury).  Accordingly, the ALJ finding that plaintiff could perform this job is not inconsistent with

her RFC.

Plaintiff also argues that the ALJ erred in adopting the VA's testimony that an individual

with her RFC could work as an office helper.  ECF No. 17 at 10-11.  Plaintiff contends that her

inability to drive precludes her from performing this job because it may involve delivery of items

to other business establishments.  *Id*.

Again, the DOT provides a detailed description of the work functions required for this job.

The DOT description states that the job entails furnishing workers with clerical supplies; opening,

sorting, and distributing incoming mail, and collecting, sealing, and stamping outgoing mail;

delivering oral and written messages; and tabulating and filing records.  Office Helper, DOT

239.567-010, 1991 WL 672232.  An office helper also "[m]ay deliver items to other business

establishments," as performed by a Deliverer (DOT 230.663-010).  *Id*.  While some jobs might

require deliveries, that requirement is not universal.  "When the word "may" is used in a job

description it only means that some establishments will require that job function; it does not mean

that all employees will be required to perform that job function some of the time."  *Lair*, 2013

WL 1247708, at * 5 (citing DOT, Parts of the Occupational Definition, § 5(c), 1991 WL 645965

("The word 'May' does not indicate that a worker will sometimes perform this tasks but rather

that some workers in different establishments generally perform one of the varied tasks listed.")).

/////

1    "Moreover, the DOT does not require that a person be able to perform all of the listed duties of

2    the job, but rather 'any combination' of them."  *Id.* (citing DOT 239.567–010).  Thus, the fact that

3    an office helper *may* have to complete deliveries is not in conflict with the ALJ's determination

4    that plaintiff could not drive an automobile.

5         Moreover, there is no indication that plaintiff is precluded from performing all deliveries

6    as that function is performed in the context of the DOT description.  According to the DOT, a

7    "deliverer" delivers "messages, telegrams, documents, packages, and other items to business

8    establishments and private homes, traveling on foot or by bicycle, motorcycle, automobile or

9    public conveyance."  Deliverer, Outside, DOT 230.663-010, 1991 WL 672160.  Plaintiff's

10   seizure disorder would not preclude her from making short distance deliveries on foot or other

11   deliveries by public conveyance.  Accordingly, the ALJ did not err by relying on the VE's

12   testimony that plaintiff could work as an office helper.

13        Plaintiff correctly argues, however, that the ALJ erred in relying on the VE's testimony

14   that a hypothetical person with her limitation to simple, repetitive tasks could work as a mail

15   clerk, a position requiring Level 3 Reasoning.  ECF No. 17 at 11.  In *Zavalin v. Colvin*, the Ninth

16   Circuit held that "there is an apparent conflict between the residual functional capacity to perform

17   simple, repetitive tasks, and the demands of Level 3 Reasoning." 778 F.3d at 846.  When such a

18   conflict exists, the ALJ "must ask the expert to explain the conflict and then determine whether

19   the vocational expert's explanation for the conflict is reasonable before relying on the expert's

20   testimony to reach a disability determination."  *Id.* (quotations omitted).  "The ALJ's failure to

21   resolve an apparent inconsistently may leave . . . a gap in the record that preclude[s] [the court]

22   from determining whether the ALJ's decision is supported by substantial evidence."  *Id.*

23        The DOT described the mail clerk position as requiring Level 3 Reasoning, but the ALJ

24   concluded that plaintiff RFC limited her to simple, routine, and repetitive tasks.  *See* Mail Clerk,

25   DOT 209.687-026, 1991 WL 671813.  Thus, an apparent conflict is present.  While the VE stated

26   that his testimony did not deviate from the DOT, the ALJ made no specific inquiries regarding

27   this apparent inconsistency.  Thus, there is no explanation for the contradiction.  Furthermore, the

28   ALJ's decision is devoid of any explanation for the finding that plaintiff could work as a mail

clerk despite being limited to simple, routine, and repetitive tasks.  The ALJ's failure to resolve the conflict constitutes error.  *See Zavalin*, 788 F.3d at 846.

Nonetheless, the error was harmless.  As discussed, the ALJ properly relied on the VE's testimony that plaintiff could work as an assembler and officer helper.  *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (applying harmless error standard in Social Security cases); *Gallo v. Comm'r of Soc. Sec. Admin.*, 449 F. App'x 648, 650 (9th Cir. 2011) ("Because the ALJ satisfied his burden at Step 5 by relying on the VE's testimony about the Addresser job, any error that the ALJ may have committed by relying on the testimony about the 'credit checker' job was harmless.").

The VE testified that there were 10,000 national and 1,000 regional assembler positions and 80,000 national and 4,000 regional office helper positions.  Even assuming plaintiff could not work as a mail sorter, there are sufficient number of assembler and office helper positions to sustain the ALJ's step-give finding.  *Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995) (60,000 national jobs is a significant number); *Thomas v. Barnhart*, 278 F.3d 947, 960-61 (9th Cir. 2002) (substantial evidence supported ALJ's finding that plaintiff was not disable where he could perform one of 1,300 jobs in the state).

Accordingly, the ALJ permissibly relied on the VE's testimony to find that plaintiff was not disabled.

B.      The ALJ Provided Adequate Reasons for Discounting Plaintiff's Credibility

Plaintiff also argues that the ALJ erred in rejecting her subjective statements as to the severity of her impairments without providing legally sufficient reasons.  ECF No. 17 at 11-13.

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors.  *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions.  *See id*. at 345–47.  The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a

10

1  prescribed course of treatment, and (3) the applicant's daily activities.  *Smolen v. Chater*, 80 F.3d

2  1273, 1284 (9th Cir. 1996).  Work records, physician and third party testimony about nature,

3  severity and effect of symptoms, and inconsistencies between testimony and conduct also may be

4  relevant.  *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).  A failure to seek

5  treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ

6  in determining whether the alleged associated pain is a significant nonexertional impairment.  *See*

7  *Flaten v. Secretary of HHS*, 44 F.3d 1453, 1464 (9th Cir. 1995).  The ALJ may rely, in part, on

8  his or her own observations, *see Quang Van Han v. Bowen*, 882 F.2d 1453, 1458 (9th Cir. 1989),

9  which cannot substitute for medical diagnosis.  *Marcia v. Sullivan*, 900 F.2d 172, 177 n. 6 (9th

10  Cir. 1990).  "Without affirmative evidence showing that the claimant is malingering, the

11  Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing."

12  *Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 599 (9th Cir. 1999).

13       Plaintiff testified that she is unable to work due to fibromyalgia, which causes chronic

14  pain throughout her body; swelling in her knees, hips, and shoulders; asthma; PTSD; and

15  depression.  AR 46-47, 49-50.  She also reported a history of seizures, which are controlled with

16  medication.  *Id*. at 56.  She stated that she has been homeless since May 2011, and was living in

17  her car at the time of the hearing.  *Id*. at 50.  She testified that she spends her days trying to relax

18  and cope with her pain, *id*. at 52, and that she has difficulty sleeping at night, *id*. at 54.  She also

19  stated that she goes to the library to use a computer, attends religious services once a week, and

20  goes to various churches daily to receive meals.  *Id*. at 52.

21       Plaintiff also completed a Function Report-Adult.  *Id*. at 235-243.  She reported

22  experiencing chronic and constant pain, seizures, headaches, and breathing problems, which

23  preclude her from focusing or completing any task.  *Id*. at 235.  On a typical day, she wakes up

24  and does what she "can to eat, and survive."  *Id*. at 236.  She further reported that she does not

25  make her own meals, is unable to do chores, does not get along with others, engages in no social

26  activities, has no hobbies, cannot handle stress, and has difficulty completing paper work.  *Id*. at

27  238-241.  She also reported that she could only walk 2 blocks before needing to rest, and that she

28  /////

1    was limited in her ability to lift, climb stairs, squat, sit, see, bend, kneel, reach, remember, stand,

2    and complete tasks. *Id*. at 240.

3         The ALJ found that plaintiff's statements regarding the severity of her symptoms were not

4    fully credible for two reasons.  First, the ALJ found "significant inconsistencies between the

5    claimant's alleged severity of her symptoms and limitations, and the evidence."  AR 27.

6    Specifically, the ALJ found that plaintiff's allegations concerning the severity of her impairments

7    were inconsistent with her reported ability to shop, prepare meals, take public transportation, pay

8    bills, count change, go out alone, walk for travel, care appropriately for her grooming and

9    hygiene, use telephones, attend church, and manage her medications and medical appointments.

10   *Id*.

11        An ALJ may discredit a claimant's subjective statements where she engages in activities

12   that are inconsistent with her allegations of debilitating impairments.  *See Molina v. Astrue*, 674

13   F.3d 1104, 1113 (9th Cir. 2012) ("Even where those activities suggest some difficulty

14   functioning, they may be grounds for discrediting the claimant's testimony to the extent that they

15   contradict claims of a totally debilitating impairment."); *see also Smolen*, 80 F.3d at 1284 (ALJ

16   may rely on inconsistent testimony in assessing a claimant's credibility).

17        Plaintiff contends that the ALJ's finding that she is able to perform various activities of

18   daily living is based on an "imaginary record," and that there is no evidence to support the finding

19   that she can "care appropriately for her grooming and hygiene, pay bills, or prepare meals."  ECF

20   No. 17 at 12 (quotations omitted).  Contrary to plaintiff's contention, however, the record

21   supports the ALJ's finding that plaintiff engaged in numerous such activities despite her

22   allegations of severe debilitating limitations.

23        While plaintiff stated that she does not prepare her own meals, she also stated that she

24   shops for her own food and that she prepares meals at her friend's house, which is where she

25   stores her groceries.  AR 51-52, 237-238.  Plaintiff report that she has "a hard time with

26   paperwork," but also stated that she is able to pay bills.  *Id*. at 238.  Medical records also

27   document plaintiff's ability to perform grooming and hygiene.  *See id*. at 311 (plaintiff "was

28   neatly and casually groomed"), 417 ("appearance is well groomed and appropriate").  Plaintiff

12

1   also claimed that she has no interests, does not get along with other people, and engages in no

2   social activities, *id*. at 239-240, but also reported attending religious services on Sundays and

3   going to various churches throughout the week to get meals.  *Id*. at 52.  Medical records also

4   indicate that plaintiff's "support network includes friends and community entities."  *Id*. at 349.

5   Thus, many of the severe impairments alleged by plaintiff were contradicted by her activities of

6   daily living.

7          The ALJ also observed that plaintiff's treatment "consisted primarily of routine follow up

8   care and medication management treatment" and that it did "not appear she has required a higher

9   level of care for her impairments."  The ALJ noted that plaintiff was not referred to a specialist

10  and medical records indicate an overall improvement in both physical and mental symptoms.  *Id*.

11  at 27.  "[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony

12  regarding severity of an impairment."  *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007); *see*

13  *also Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (finding that a favorable response

14  to conservative treatment undermined the plaintiff's reports of debilitating pain).

15         While not disputing the conservative nature of her treatment, plaintiff challenges the

16  ALJ's reliance on her treatment to discount her credibility, arguing that the "ALJ was required to

17  consider the extent of Plaintiff's medical treatment in light of her complete lack of resources."

18  ECF No. 17 at 13.  Plaintiff contends that her medical treatment was limited to county health

19  clinics, and that there "is no suggestion anywhere in the record that the lack of more aggressive

20  treatment was a result of anything else."  *Id*.

21         Plaintiff's argument mischaracterizes the ALJ's finding while simultaneously lending

22  credence to the ALJ's credibility determination.  The ALJ did not discredit plaintiff's subjective

23  complaints for failure to obtain more aggressive treatment, as argued by plaintiff.  Instead, the

24  ALJ found that plaintiff's impairments only necessitated conservative treatment, which in fact

25  provided improvement to plaintiff's physical and mental symptoms.  AR 27.  This is consistent

26  with plaintiff's acknowledgment that the record does not suggest more aggressive treatment was

27  needed.  Moreover, plaintiff's financial situation is irrelevant to whether her impairments only

28  /////

1   required conservative treatment.  Accordingly, plaintiff has failed to demonstrate that the ALJ

2   erred in discounting his credibility based on her receipt of conservative treatment.

3        Based on the foregoing, the ALJ's adverse credibility finding is supported by substantial

4   evidence.

5   IV.   <u>CONCLUSION</u>

6        Accordingly, it is hereby ORDERED that:

7     1.  Plaintiff's motion for summary judgment is denied;

8     2.  The Commissioner's cross-motion for summary judgment is granted; and

9     3.  The Clerk is directed to enter judgment in the Commissioner's favor.

10  DATED:  March 28, 2017.

11

12  EDMUND F. BRENNAN
    UNITED STATES MAGISTRATE JUDGE